MEMORANDUM **
Parent appeals the district court’s judgment affirming the Commissioner of Social Security’s final administrative decision denying his second application for disability insurance benefits and supplemental security income on the ground that he was not disabled under the Social Security Act. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291, and we affirm.
Parent raises three issues, each of which we address in turn.
Adverse Credibility Finding
As part of the Administrative Law Judge’s determination at step four that Parent had the residual functional capacity to perform light work, the ALJ was required to assess his alleged pain and symptoms arising from his impairments. As the ALJ explained, he was obliged to “evaluate the intensity, persistence, and limiting effects of the claimant’s symptoms to determine the extent to which they limit the claimant’s functioning.” And, to the extent Parent’s statements were not substantiated by objective evidence, the ALJ had to make a “finding on the credibility of the statements based on a consideration of the entire case record.”
After so doing, the ALJ concluded that Parent’s “medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant’s statements concerning the intensity, persistence and limiting effects of those symptoms are not credible.” The ALJ factored Dr. Forney-Gorman’s opinion into his discussion and evaluation of this issue.
The ALJ’s adverse credibility finding regarding Parent’s testimony was adequately supported by clear and convincing evidence and reasons. This evidence included the relevant inputs of Dr. Webber, Dr. Newbrough, Dr. Schofield, and Dr. Bach.
*606 The record evidence of malingering is particularly telling with respect to Parent’s credibility in connection with his description of the intensity, persistence, and limiting effects of the symptoms caused by his impairments. In 2003, he suffered an accident at work which he claimed materially interfered with his ability to work. Less than two months later he was observed performing construction work at a laundromat. The ALJ assigned to Parent’s first application for benefits summarized Parent’s activities in his decision of September 7, 2007:
After considering the evidence of record, the undersigned finds that the claimant’s medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant’s statements concerning the intensity, persistence and limited effects of these symptoms are not entirely credible.
The claimant’s longitudinal medical history does not support his allegations of disability. As a result of his work-related fall, the claimant was treated and examined by physicians under the direction of the Montana Workmen’s Compensation program. On July 10, 2003, the claimant was examined by Dr. Mark Paul, treating source, who noted that the claimant was complaining of severe back pain, numbness and radiation of pain in his right leg. Dr. Paul ■noted that the claimant was not bearing weight on his right leg, but observed no other functional abnormalities.
On July 23, 2003, Dr. Paul again examined the claimant, who was then complaining of pain in his shoulders and right arm. He was also complaining of frequent headaches and back pain. Dr. Paul diagnosed a cervical, thoracic and lumbar strain secondary to a fall.
Following these visits with Dr. Paul, video surveillance of the claimant was obtained by workmen’s compensation. On August 22, 2003, the claimant was observed performing construction work at a laundromat in Corvallis, Montana. Specifically, he was observed bending and locking a trailer hitch, kneeling, carrying laundry components and scrap metal out of the laundromat and squatting to drill on a machine. He also reached into a tool box and lifted out tools, dragged a large object out the door and moved a large metal unit without the aid of a hand truck. On August 24, 2003, he was observed loading a large boom box into his car, and he put long pieces of pipe into a scrap pile. The undersigned notes that these activities are wholly inconsistent with the claimant’s allegations....
Dr. Paul again examined the claimant on September 30, 2003, noting that his pain behaviors in the examining room were not consistent with his behavior in the waiting room. Dr. Paul also reviewed the report made from the surveillance video which indicated that the claimant was performing heavy work tasks. Dr. Paul concluded that there were no objective physical findings which justified the claimant’s allegations, and he informed the claimant that he would no longer provide any treatment or care at his clinic. Shortly thereafter, the claimant record indicates that the claimant’s workmen’s compensation claim was closed....
Finally, as a result of this application, the claimant underwent a psychological examination in May 2007. As noted above, Dr. Patricia Webber noted that the claimant endorsed illogical or highly atypical neurological symptoms, symptoms of memory impairment that were inconsistent with patterns of impairment seen in brain dysfunction or injury, *607 atypical symptoms of depressions and anxiety, and symptoms atypical of psychotic disorders. In short, she opined that his evaluation was reflective of general malingering. In any event, she observed that the claimant’s speech, language, hearing and social skills were intact, and he retained the ability to concentrate and complete basic arithmetic.
(internal citations omitted). Dr. Webber also concluded that there was a “high probability” that Parent provided to her information that was “systematically biased to under-represent [his] level of function.”
Finally, Parent’s description of his severe limitations with respect to the current application for benefits was inconsistent with his daily activities and his behavior and conviction for illegally obtaining prescription narcotics by scavenging through estate sale garbage.
In sum, Parent has a documented history of exaggerating the effects of his medical problems in order to pursue benefits, as recorded by Dr. Webber.
The Opinion of Parent’s Treating Physician
Parent claims the ALJ erred in rejecting the opinions of his treating physician, Dr. Forney-Gorman. An ALJ may do so if the ALJ provides “specific and legitimate reasons supported by substantial evidence in the record.” Reddick v. Chater, 157 F.3d 715, 725 (9th Cir.1998).
Dr. Forney-Gorman’s opinion was that Parent “is unable to work due to chronic illness.” In a medical questionnaire dated November 2, 2009, she indicated 1) that he would need to lie down 7-10 times a day for pain relief, 2) that he was not capable of working an “8 hr/day, 5 days/week,” and that he would probably miss work more than five days in an average month. When asked on the questionnaire to provide the medical bases for these assessments, she wrote “See medical records.”
Here, as a beginning, we adopt without alteration the district court’s analysis which we find to be correct.
Family practitioner Dr. Alison For-ney-Gorman has been one of Parent’s treating physicians at least since August 2006. In November 2009, just a few weeks before the administrative hearing, Dr. Forney-Gorman completed a medical questionnaire on which she indicated that Parent could lift no more than 15 pounds, could stand, walk, and sit for a combined total of only three hours in an eight-hour day, would need to lie down seven to 10 times each day, and would miss more than five days of work each month.
The ALJ rejected Dr. Forney-Gor-man’s restrictive assessment. The ALJ explained that, “having compared Dr. Forney-Gorman’s treatment notes with her assessment,” he did “not find support for the degree of limitations and frequency of rest breaks and absences identified.”
Although Dr. Forney-Gorman has been Parent’s treating physician for a number of years, there are relatively few progress notes. For the most part, it appears that Dr. Forney-Gorman saw Parent on a monthly basis during the relevant time period, usually to refill his pain medications. As those progress notes reflect, Parent had several severe impairments for which Dr. Forney-Gor-man prescribed pain medication. The ALJ accepted as much, finding that Parent could not return to medium-level work, and would be precluded from performing any more than a limited range of light work.
*608 Dr. Forney-Gorman’s progress notes do not, however, contain much in the way of specific clinical findings. And some of her observations are inconsistent with the extreme limitations she later imposed. In October 2009, for example, Dr. Forney-Gorman wrote that [P]arent was in no acute distress, oriented, displayed an appropriate mood and affect, good judgment, and good insight. When she completed the subsequent medical questionnaire, Dr. Forney-Gorman simply referenced her progress notes. She did not point to or identify any clinical findings, or otherwise explain what it was that led her to impose such extreme limitations. Absent any such explanation, the ALJ reasonably rejected Dr. Forney-Gorman’s conclusory opinion. See e.g. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir.2002) (an ALJ may reject a treating physician’s opinion if it is “brief, conclusory, and inadequately supported by clinical findings”); CarmicJcle v. Comm’r of Soc. [Sea] Sea Admin., 533 F.3d 1155, 1165 (9th Cir.2008) (an ALJ may discount a medical opinion based on contradictions between the opinion and contemporaneous treatment notes).
(record citations and footnote omitted).
Returning to our analysis, Dr. For-ney-Gorman’s opinion is not consistent with other substantial evidence in the record. Here, it is important to distinguish between Dr. Forney-Gorman’s medical findings and diagnosis, on one hand, and her opinion related to Parent’s ability to work, on the other. The ALJ did not reject Dr. Forney-Gorman’s diagnosis and medical findings, just her conclusory opinion regarding Parent’s ability to work. Dr. Forney-Gorman’s notes reflect that much of her information regarding the intensity, persistence, and limiting effects of Parent’s impairments came from him. Ordinarily, this source would not be suspicious, but given the self-serving problems with Parent’s credibility, this circumstance diminishes the force of her opinion. It simply does not follow that Dr. Forney-Gorman’s medical findings require a conclusion that Parent was disabled and unable to work.
The constellation of Parent’s impairments or combination thereof did not meet or medically equal the criteria that end the inquiry at step three of a claimant’s sequential evaluation, a point which Parent’s counsel does not contest. Thus, the inquiry proceeded to the next step.
20 C.F.R. § 404.1527 explains how the Social Security Administration evaluates opinion evidence such as Dr. Forney-Gor-man’s:
(b) How we consider medical opinions. In determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive.
(c) ... (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.
(emphasis added) (internal citation omitted).
In arriving at his conclusions, the ALJ said he carefully considered “all the evidence.” With respect to his findings, he said he considered “the entire record.” These statements encompass among other things the evidence of Parent’s exaggerated effects of his impairments which in turn weighs against Dr. Forney-Gorman’s opinion.
We respectfully reject our concurring and dissenting colleague’s assertions that we have inappropriately manufactured “ad *609 hoc reasons” for disregarding Dr. Forney-Gorman’s opinion, and that we have done for the ALJ what he should have done himself. To test Dr. Forney-Gorman’s opinions on the subject, submitted by Parent on his behalf, the ALJ simply followed the doctor’s lead. When she was asked to provide “the medical bases” for her opinions, she directed everyone to her “medical records.” Thus, the ALJ did what the doctor suggested, and he found insufficient support — as detailed by the district court — for her unsubstantiated conclusions, as do we. We can hardly fault the ALJ for following the doctor’s instructions to see if he could find what she suggested he would. He did not. Neither do we.
Hypothetical Questions
Parent’s final issue is that the ALJ inappropriately ignored the vocational expert’s testimony as to the third hypothetical presented to him, a hypothetical which included his limitations as described by Parent himself and by Dr. Forney-Gorman. Because this claim is essentially a restatement of Parent’s unpersuasive arguments regarding (1) his credibility, and (2) Dr. Forney-Gorman’s rejected opinion, this claim also has no merit.
Conclusion
The ALJ concluded that “the evidence of record does not support finding the claimant has restrictions greater than those identified in [his] residual functional capacity.” The record supports this decision.
AFFIRMED.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.